## Christman v. Laudenslager

*Charles M. Bolich,* for plaintiff.
*Linn H. Schantz,* for defendant.

HENNINGER, P. J., December 29, 1947.—In this action in trespass, plaintiff sued for damages to his automobile, which was struck by defendant's car at a rural intersection of a blacktop township road with a concrete public highway.

At the close of plaintiff's case, we granted defendant's motion for a compulsory nonsuit and the matter is now before us on a rule to remove the nonsuit.

Plaintiff was traveling west on the 32-foot wide (including shoulders) cement highway at 30 to 35 miles per hour. When he was 100 feet from the intersection, he saw defendant's car traveling south on the blacktop township road 50 feet from the intersection and slowing down to 10 miles per hour.

Plaintiff assumed defendant planned to stop to yield the right of way to him, but instead, according to his testimony, she continued and was going 15 to 20 miles per hour when she struck his right rear wheel as his car was "a little better than halfway across the intersection".

Plaintiff's main argument in asking to have the nonsuit removed is based upon the premise that defendant was driving on a secondary highway and therefore had the duty to yield the right of way to plaintiff.

The fact that defendant's highway was a secondary one was, however, improperly established. Defendant filed no affidavit of defense and we, therefore, admitted into evidence plaintiff's pleading that the highway on which defendant was driving was a "secondary" highway. This admission would have been proper under section 13 of the Practice Act of May 14, 1915, P. L. 483, as amended, 12 PS §412, which provides that identity, agency, ownership and "all similar averments", if not denied shall be taken to be admitted.

The Practice Act has been suspended by Pa. R. C. P. 1453(3) and the section above referred to has been

superseded by Pa. R. C. P. 1045 (*b*) which enumerates specifically the matters admitted by failure to deny but no longer continues the omnibus phrase "and all similar averments", but goes on to say instead that "all other averments shall be deemed to be denied".

We permitted plaintiff to state that the road was a secondary one simply because its nature as such was already an admitted fact in the case. Otherwise it would have been a conclusion, beyond his power or authority to assert.

In motions for a nonsuit or to remove a compulsory nonsuit we are, however, bound by the record as made: Buehler v. U. S. Fashion Plate Co., 269 Pa. 428, 434. In determining whether or not plaintiff has made out a case, therefore, we cannot strike from the evidence facts erroneously admitted, for had we refused the improper offer, plaintiff might have been in a position to prove the same facts by competent evidence.

For present purposes, therefore, we accept as a fact that defendant was driving on a secondary highway and if that fact is controlling we will be bound to remove the nonsuit and give him the opportunity of proving the fact by competent evidence at the ensuing trial of the case.

We are not aware of any significance in the use of the term "secondary highway" as it might relate to the law of negligence. We have an independent recollection of the use of the term in former times by the Pennsylvania State Highway Department for its own convenience, but, so far as we know, it was never written into the law and never referred to the relative rights and duties of users of the highways.

The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §1, ff. in sec. 102 thereof, 75 PS §2, defines "Highway" as "Every way or place, of whatever nature, open to the use of the public as a matter of right, for purposes of vehicular travel. . . ." It makes no further distinction between highways, whether State or local, im-

proved or unimproved, black top or cement, excepting as they may be controlled by traffic lights or signs.

If there were any such distinction, there is no evidence in this case that plaintiff was driving on a State highway, although it is our opinion that he was. Plaintiff is in a poor position to make anything of the difference between the cement on which he was operating and the black top of defendant's road, for at the eastern terminus of his cement road, there is a stop sign in favor of a through traffic blacktop road. There was no stop sign to affect either of the parties to this controversy.

We, therefore, apply the provisions of The Vehicle Code uniformly to plaintiff and defendant. Under section 1013 thereof, 75 PS §572(a), since both parties were approaching the intersection at approximately the same time and each at a lawful speed, the car coming from the right — defendant's car — had the right of way and it was the duty of plaintiff to yield that right of way to defendant. While it is true that on a strict mathematical calculation plaintiff, traveling at 30 to 35 miles per hour might have traversed his 100 feet to the crossing before defendant, traveling 10 miles per hour from her position 50 feet away, nevertheless we must remember that both distance and speed were mere estimates and plaintiff, therefore, with the inferior right of way and with only about a second's margin, was testing a danger. In any event, they would have arrived at the intersection at approximately the same time.

Plaintiff asks us to suspend the written rules of the road on the basis of two appellate court cases and one lower court case, which hold that a person approaching a main thoroughfare from a lane or narrow road must proceed with great caution, regardless of the technical rules of right of way: McNulty v. Horne Co., 298 Pa. 244, 248; Shore Service, Inc., v. Philadel-

phia Rural Transit Co., 97 Pa. Superior Ct. 541, 544; King v. McQuale, 38 D. & C. 269.

In the McNulty case, supra, plaintiff was approaching from the right, so that it was defendant's duty to yield her the right of way, regardless of plaintiff's being on the main and defendant on the side street. In the Shore Service case, supra, the doctrine was used to bar a plaintiff with a technical right of way, because of his failure to observe extra caution upon approaching a busy street.

The rule announced in these cases, therefore, does not change the statutory rules of right of way, but merely imposes a burden of additional caution on one who would arbitrarily exercise a technical right of way. In our case, it might operate to charge defendant with negligence in continuing to approach the busy road, but it would not lessen the burden on plaintiff to recognize the statutory rule. It is inconceivable that the rules of the road may be changed by each motorist's private opinion of the relative importance of his road and that being used by others in the absence of stop signs which officially stamp one line of traffic as superior to another.

The King case, supra, seems to support plaintiff's contention for in that case a plaintiff approaching from the left on a busy street was not charged with contributory negligence against a defendant approaching simultaneously from the right, but on a side street. In the face of the written rules of the road, however, we cannot follow that case in appearing to permit relative volume of traffic to outweigh rules clearly prescribed.

Defendant's slow speed in approaching the intersection and her greater speed as she entered the intersection also go to her negligence but do not excuse plaintiff's contributory negligence. While a plaintiff may assume that other drivers will obey the law, he assumes at his peril that they are going to act in any

particular manner for his benefit. Defendant's duty under the circumstances was to have her car under perfect control, but not to bring it to a complete stop before entering the intersection.

Plaintiff, therefore, in continuing to enter an uncontrolled intersection in the face of traffic approaching from his right at approximately the same time, convicted himself of contributory negligence and was properly nonsuited.